UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

———————————————————————— x

RICARDO BELTRE and MARITZA BELTRE,    :
                                                                    :
                              Plaintiffs,        :        No. 09 Civ. 888 (RRM)(RLM)
                                                                    :
                         - against -            :        **ANSWER AND COUNTERCLAIMS**
                                                                    :
360 BROOKLYN INVESTORS, LLC,          :
                                                                    :
                              Defendant.      :
                                                                    :
———————————————————————— x

        Defendant 360 Brooklyn Investors, LLC ("Sponsor"), by its undersigned

attorneys, for its answer to plaintiffs' Complaint dated March 3, 2009, and counterclaims against

plaintiffs Ricardo and Maritza Beltre, alleges as follows:

        1.        Denies the allegations of paragraph 1 of the Complaint, except refers to the

Interstate Land Sales Full Disclosure Act, 15 U.S.C. § 1701 *et seq.* (the "Act"), the regulations,

24 C.F.R. § 1700 *et seq.* (the "Regulations"), and the HUD Guidelines, 61 Fed. Reg. 13596 *et

seq.* (the "Guidelines"), for their true, correct and complete terms.

        2.        Denies the allegations of paragraph 2 of the Complaint, except refers to the

purchase agreements dated April 30, 2007 (the "Purchase Agreements") for their true, correct

and complete terms, and admits Sponsor received from plaintiffs the sum of $230,000.

        3.        Denies the allegations of paragraph 3 of the Complaint, except refers to the Act,

Regulations and Guidelines for their true, correct and complete terms.

        4.        Denies the allegations of paragraph 4 of the Complaint, except refers to the letter

referenced therein for its true, correct and complete terms.

KL3 2715233.2

5.      Denies the allegations of paragraph 5 of the Complaint.

6.      With respect to the allegations set forth in paragraph 6 of the Complaint, denies that plaintiffs have stated a claim against Sponsor and otherwise denies the allegations.

7.      Denies knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 7 of the Complaint.

8.      Admits the allegations of paragraph 8 of the Complaint, except denies that its office is in Suite 709 and avers that its office is in Suite 704.

9.      With respect to the allegations set forth in paragraph 9 of the Complaint, admits that plaintiffs seek to premise jurisdiction on various Sections of Titles 15 of the U.S. Code, but denies that plaintiffs have stated a claim against Sponsor.

10.     With respect to the allegations set forth in paragraph 10 of the Complaint, refers to the full text of this section of the U.S. Code for its true, correct and complete terms.

11.     Denies the allegations set forth in paragraph 11 of the Complaint, except admits that plaintiffs seek to premise personal jurisdiction on various State and Federal provisions and that it is subject to this Court's jurisdiction.

12.     Denies the allegations set forth in paragraph 12 of the Complaint, except admits that plaintiffs seek to premise venue on various Sections of Titles 28 of the U.S. Code and that venue is proper in this District.

13.     Admits that Sponsor is the developer of the leasehold condominium located at 360 Furman Street, Brooklyn, New York.

14.     Denies the allegations of paragraph 14 of the Complaint, except admits that it has used the mails, overnight delivery services, data and voice communication, and denies knowledge or information sufficient to form a belief as to the ultimate source of all materials used in the condominium.

15.     Denies the allegations of paragraph 15 of the Complaint, except refers to the Purchase Agreements for their true, correct and complete terms, and admits that Sponsor received from plaintiffs the sum of $230,000.

16.     Denies the allegations of paragraph 16 of the Complaint.

17.     Denies the allegations of paragraph 17 of the Complaint.

18.     Denies the allegations of paragraph 18 of the Complaint.

19.     Denies the allegations of paragraph 19 of the Complaint.

20.     Denies the allegations of paragraph 20 of the Complaint.

21.     Denies the allegations of paragraph 21 of the Complaint.

22.     Denies the allegations of paragraph 22 of the Complaint, except refers to the letter referenced therein for its true, correct and complete terms.

23.     Denies the allegations of paragraph 23 of the Complaint.

## Answering the First Cause of Action

24.     Sponsor hereby incorporates and realleges its responses to the foregoing paragraphs of the Complaint as if set forth fully herein.

KL3 2715233.2

25.      Denies the allegations of paragraph 25 of the Complaint, except refers to the Act, the Regulations and the Guidelines for their true, correct and complete terms.

26.      Denies the allegations of paragraph 26 of the Complaint, except admits that it, directly or indirectly, did develop, market or advertise units in the condominium.

27.      Denies the allegations of paragraph 27 of the Complaint.

28.      Denies the allegations of paragraph 28 of the Complaint, except refers to the Act, the Regulations and the Guidelines for their true, correct and complete terms.

29.      Denies the allegations of paragraph 29 of the Complaint, except refers to the Act, the Regulations and the Guidelines for their true, correct and complete terms.

30.      Denies the allegations of paragraph 30 of the Complaint, except refers to the Act, the Regulations and the Guidelines for their true, correct and complete terms.

31.      Denies the allegations of paragraph 31 of the Complaint, except refers to the Act, the Regulations and the Guidelines for their true, correct and complete terms.

32.      Denies the allegations of paragraph 32 of the Complaint.

33.      Denies the allegations of paragraph 33 of the Complaint, except refers to the letter referenced therein for its true, correct and complete terms, and refers to the Act, the Regulations and the Guidelines for their true, correct and complete contents.

34.      Denies the allegations of paragraph 34 of the Complaint.

35.     With respect to the allegations set forth in paragraph 35 of the Complaint, denies that plaintiffs are entitled to any of the relief sought.

### Affirmative Defenses

Without in any way admitting any of the allegations of the Complaint, and without admitting or suggesting that it bears the burden of proof on any of the following issues, Sponsor alleges the following separate and independent affirmative defenses:

### First Affirmative Defense

36.     Plaintiffs have failed to state a claim against Sponsor upon which relief may be granted.

### Second Affirmative Defense

37.     Plaintiffs' claim is barred by the terms of the Act, the Regulations and the Guidelines.

### Third Affirmative Defense

38.     Sponsor is exempt from complying with the Act in connection with the building situated at 360 Furman Street, Brooklyn, New York and/or with the apartment units that are the subject of plaintiffs' Complaint.

### Fourth Affirmative Defense

39.     Because plaintiffs seek an equitable remedy, their claim is barred by their unfair and/or improper conduct.

KL3 2715233.2

**Fifth Affirmative Defense**

40.     Plaintiffs' claim is barred by the doctrines of unclean hands, unjust enrichment, bad faith and/or equitable estoppel.

**Sixth Affirmative Defense**

41.     Plaintiffs' claim is barred by the doctrines of laches, waiver and/or acquiescence.

**Seventh Affirmative Defense**

42.     Even if plaintiffs had rights under the Act, the Regulations or the Guidelines, the Court is not obligated to, and exercising its equitable powers should decline to, award the relief requested by plaintiffs.

**Eighth Affirmative Defense**

43.     Plaintiffs' claims are barred because Sponsor substantially complied with the Act; because Sponsor disclosed information to Plaintiffs that is at least substantially equivalent to the information required to be disclosed by the Act; and/or because New York's laws and regulations provide sufficient protection for Plaintiffs with respect to the matters to which the Act requires disclosure.

**Ninth Affirmative Defense**

44.     Plaintiffs' claim is barred due to the lack of one or more indispensable parties.

**Tenth Affirmative Defense**

45.     Plaintiffs lack standing to bring the claim asserted in the Complaint.

KL3 2715233.2

## Eleventh Affirmative Defense

46.     Plaintiffs' claims are barred because the Purchase Agreements were validly terminated prior to any attempt to exercise any right under the Act.

## Twelfth Affirmative Defense

47.     Even if plaintiffs had rights under the Act, the Regulations or the Guidelines, those rights were not exercised in a timely manner.

## Thirteenth Affirmative Defense

48.     Plaintiffs are not entitled to attorneys' fees, costs or penalties of any kind, or any other form of damages from Sponsor under the claim alleged and/or under the relevant portions of Act, the Regulations or the Guidelines.

## Allegations in Support of Counterclaims

49.     These counterclaims arise from breaches by plaintiffs of the Purchase Agreements for the purchase of two leasehold condominium units at a building located at 360 Furman Street, Brooklyn, New York.  The building at that address has existed for many years and has recently undergone a renovation to facilitate its use as a residential leasehold condominium known as One Brooklyn Bridge Park Condominium (the "Property").  Plaintiffs entered into the Purchase Agreements on or about April 30, 2007, when the renovations at the Property were well underway.  (Copies of the Purchase Agreements are annexed as Exhibit A and B.)  By the time plaintiffs' units were ready to close, however, whether due to the decline in the New York real estate market or otherwise, plaintiffs refused to close the transaction.

**The Parties and Jurisdiction**

50.     Upon information and belief, plaintiffs have an address at 88 Warren Street, Brooklyn, New York.

51.     Sponsor is a company authorized to do business in New York, with an address at 86 Chambers Street, Suite 704, New York, New York.

52.     The Court has supplemental jurisdiction over these counterclaims, pursuant to 28 U.S.C. § 1367.

**The Relevant Provisions of the Purchase Agreement**

53.     The Units:   The Purchase Agreements indicates that plaintiffs "agree[] to purchase" Units 318 and 433 at the Property.  Exh. A and B at § 3.

54.     Purchase Price:   The purchase price for each of those Units is $925,000 and $1,375,000.  *Id.* at § 4.1.  Plaintiffs agreed to pay, and did in fact pay, "Deposits" of 10% of the purchase prices at the time the Purchase Agreements were executed, totaling $230,000.  After payment of the Deposits, the "Balance of Purchase Price" due was $832,500, in the case of Unit 318, and $1,237,500, in the case of Unit 433.  *Id.*

55.     Closing:   The Balance of Purchase Price for each Unit was due at the time Sponsor delivered a deed, which was to occur at the "Closing of Title."  *Id.* at §§ 4.1(b) and 7.1. The Closing of Title was to occur "on such date and hour as Sponsor may designate to Purchaser on not less than 30 days' prior written notice."  *Id.* at § 6.1.

56. <u>Defaults</u>:   Section 13 of the Purchase Agreements lists certain "Events of Default."   They include, among other things: "(i) Purchaser's failure to pay the Balance of the Purchase Price . . .; or (ii) Purchaser's failure to pay, perform or observe any of Purchaser's other obligations under this Agreement[.]"   *Id.* at § 13.1.   The Purchase Agreements also provide as follows:

> **TIME IS OF THE ESSENCE** with respect to Purchaser's obligations to pay the Balance of the Purchase Price . . . Upon the occurrence of an Event of Default, Sponsor, in its sole discretion, may elect by notice to Purchaser to (i) cancel this Agreement, or (ii) seeks specific performance.   If Sponsor elects to cancel, Purchaser shall have 30 days from the giving of the notice of cancellation to cure the specified default.   If the default is not cured within such 30 days, TIME BEING OF THE ESSENCE, then this Agreement shall be deemed cancelled, and Sponsor shall have the right to retain, as and for liquidated damages, the entire Deposit and any interest earned on the Deposit.   Upon the cancellation of this Agreement, Purchaser and Sponsor will be released and discharged of all further liability and obligations hereunder and under the Plan, and the Unit may be sold to another as though this Agreement had never been made, and without any obligation to account to Purchaser for any of the proceeds of such sale.

*Id.* at §13.2 (emphasis in original).

57. <u>Financing</u>:   The standard form Purchase Agreements for the Property contained an express disclaimer of any financing contingency – *i.e.*, if a purchaser is unable to obtain a mortgage he or she must close anyway.   Plaintiffs, however, negotiated a rider to the contracts which afforded them a limited time to cancel the Purchase Agreements if they were unable to obtain financing.   *See id.* at "Rider re: Financing Contingency."   That right was never exercised.

58. <u>Attorneys' Fees</u>:   The Purchase Agreements provide that Sponsor's attorneys' fees are recoverable in certain circumstances:

> Purchaser shall be obligated to reimburse Sponsor for any legal fees and disbursements incurred by Sponsor in defending Sponsor's rights under this Agreement, or in the event Purchaser defaults under this Agreement beyond any applicable grace period, in canceling this Agreement or otherwise enforcing Purchaser's obligations hereunder.

*Id.* at § 30.

## Events Leading to this Dispute

59.     On or about July 11, 2008, Sponsor sent plaintiffs a closing notice by certified mail for Unit 318.  (A copy of the July 11, 2008 notice is annexed as Exhibit C.)  In that notice, Sponsor set the closing for August 12, 2008.  *Id.*   However, on August 7, 2008, plaintiffs' attorney responded with a letter stating that his clients were allegedly "having financial difficulties" and asking to have a settlement meeting with a representative from Sponsor. Plaintiffs' attorney also claimed that the July 11, 2008 closing notice had been defective because it provided fewer days notice than required by the Purchase Agreements for closing notices served by mail.  (A copy of the August 7, 2008 letter is annexed as Exhibit D.)

60.     Sponsor, by notice dated August 11, 2008, rejected plaintiffs' request for a meeting, but did re-notice the closing for Unit 318 for September 18, 2008 – more than the minimum time required by the Purchase Agreements.  (A copy of the August 11, 2008 notice is annexed as Exhibit E.)  *See also* Exhibit A at §§ 6.1 and 25.1 (requiring 30-days notice to schedule the closing, and three additional business days for service by mail).

61.     On or about July 30, 2008, Sponsor sent plaintiffs a closing notice for Unit 433. The notice set September 8, 2008 as the closing date for that Unit (which, again, was adequate time under the Purchase Agreements).  (A copy of the July 30, 2008 notice is annexed as Exhibit F.)  *See also* Exhibit B at §§ 6.1 and 25.1.

-10-

62.     Though Sponsor was ready, willing and able to close on the designated dates, Plaintiffs failed to appear.  Accordingly, on September 24, 2008, Sponsor sent a notice indicating that it was "elect[ing] to terminate the Purchase Agreements due to the occurrence of an Event of Default" if plaintiffs failed to cure their default within 30 days, with "TIME BEING OF THE ESSENCE."  At the expiration of the 30 days, "the Purchase Agreements will be deemed cancelled and Sponsor shall be entitled to retain [the Deposits] for [the] Unit[s] and interest that shall have accrued thereon as liquidated damages."  (A copy of the September 24, 2008 notice is annexed as Exhibit G.)

63.     Plaintiffs failed to cure their default within the time permitted.  Accordingly, on November 17, 2008, Sponsor sent additional notices stating that, among other things, as a result of plaintiffs' "fail[ure] to cure [their] default . . . the Purchase Agreement [for each of the Units] is deemed cancelled."  (Copies of the November 17, 2008 notices are annexed as Exhibits H and I.)

64.     Pursuant to Section 13.2 of the Purchase Agreements, as a result of this termination, Sponsor was entitled "to retain, as and for liquidated damages, the entire Deposit and any interest earned on the Deposit."  Furthermore, Sponsor was "released and discharged of all further liability and obligations . . . and the Unit may be sold to another as though this Agreement had never been made, and without any obligation to account to Purchaser for any of the proceeds of such sale."

65.     On February 19, 2009, more than two months after Sponsor had already terminated the Purchase Agreements, new attorneys for plaintiffs purported to "terminate" the Purchase Agreements on plaintiffs' behalf, ostensibly under the Act.  (A copy of this February

19, 2009 letter is annexed as Exhibit J.)  Plaintiffs' letter failed to even mention – let alone sufficiently address – how they could "terminate" the Purchase Agreements that had already been terminated months earlier.  In fact, plaintiffs have no such right or ability.

### As and for a First Counterclaim

66.     Sponsor repeats and realleges the allegations set forth in all prior paragraphs as if fully set forth herein.

67.     The Purchase Agreements required plaintiffs to purchase Units 318 and 433 at the Property from Sponsor.

68.     However, plaintiffs failed to appear for the Closings of Title on the dates duly scheduled by Sponsor.  This constituted an Event of Default under the Purchase Agreement.  *See* Exhs. A and B at § 13.1.

69.     Sponsor then delivered a notice, dated September 24, 2008, saying that plaintiffs' failure to appear and close had been an Event of Default and affording plaintiffs 30 days to cure their default with "TIME BEING OF THE ESSENCE."

70.     Plaintiffs failed to cure.  Accordingly, on November 17, 2008, Sponsor sent plaintiffs an additional notice informing them that, as a result of plaintiffs' "fail[ure] to cure [their] default" each of the "Purchase Agreements is deemed cancelled."  Exhs. H and I.

71.     Pursuant to Section 13.2 of the Purchase Agreements, if the Purchase Agreement is cancelled and terminated as a result of an Event of Default by plaintiffs, Sponsor is entitled "to retain, as and for liquidated damages, the entire Deposit and any interest earned on the Deposit," and the Purchase Agreement is deemed "as though [it] had never been made."

-12-

72.     By reason of the foregoing, Sponsor is entitled to retain the Deposits and interest thereon as liquidated damages pursuant to Section 13.2 of the Purchase Agreements.

### As and for a Second Counterclaim

73.     Sponsor repeats and realleges the allegations set forth in all prior paragraphs as if fully set forth herein.

74.     By reason of plaintiffs' refusal to comply with their contractual obligations, as more fully described above, Sponsor has been required to incur attorneys' fees, costs, interest expenses and other expenses to enforce the Purchase Agreements.

75.     Pursuant to Section 30 of the Purchase Agreements, plaintiffs are required to pay Sponsor for those costs and fees.  Plaintiffs, however, have not done so.

KL3 2715233.2

**Prayer for Relief**

WHEREFORE, Sponsor demands judgment as follows: (i) dismissing the Complaint with prejudice; (ii) on Sponsor's first counterclaim, ordering that Sponsor may retain the Deposits, together with interest thereon; (iii) on Sponsor's second counterclaim, ordering that plaintiffs pay Sponsor's costs and fees to the extent permitted under the Purchase Agreement; and (iv) for such other and further relief as the Court deems just and proper.

Dated:   New York, New York
      April 30, 2009

                      KRAMER LEVIN NAFTALIS & FRANKEL LLP

                      By:   /S/ Jeffrey W. Davis
                          Jeffrey W. Davis (JD-7170)
                          Natan M. Hamerman (NH-5845)

                      1177 Avenue of the Americas
                      New York, New York 10036
                      (212) 715-9100

                      Attorneys for 360 Brooklyn Investors, LLC

TO:   Chad B. Simon (CS-1103)
      Wilentz, Goldman & Spitzer P.A.
      90 Woodbridge Center Drive
      P.O. Box 10
      Woodbridge, New Jersey 07095
      (732) 636-8000
      Attorneys for plaintiffs

KL3 2715233.2